[No. 5582–5–III.   Division Three.   June 7, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. BRYAN N. KESTER, *Appellant*.

Paulette Kohman, John Adams Moore, Jr., and Dobbs, Moore & Kirkevold, for appellant (appointed counsel for appeal).

Jeffrey C. Sullivan, Prosecuting Attorney, for respondent.

McINTURFF, J.—Bryan N. Kester appeals a conviction of aggravated first degree murder under RCW 9A.32.030(1) and RCW 10.95.020(7) and (9).

On September 29, 1982, Mr. Kester was hired by the Van Vlecks to pick apples in their orchard. After working 1½ days, Mr. Kester was fired for damaging the apples during the picking process.

The versions diverge as to what later occurred. Mr. Kester testified that during the evening of September 30, 1982, he forced his way into the Van Vleck residence by showing Mrs. Van Vleck a gun tucked into the waistband of his pants. He stated the victim seduced him and accidentally killed herself during a struggle after intercourse. Conversely, expert witnesses and investigating police officers concluded there was a struggle, a rape, and a homicide. The jury found Mr. Kester guilty of first degree murder with aggravating circumstances, and he was sentenced to life imprisonment without parole.

Mr. Kester argues he was denied a fair trial because at the close of his case the State amended the information to include additional aggravating circumstances of burglary and robbery. We deem it unnecessary to answer this con-

tention because the jury found in a special verdict he committed murder while concealing and/or committing rape, which was alleged in the original information,[1] the first amended information,[2] and the second amended information.[3] The gravamen of the objection made by Mr. Kester is the lack of time to prepare an adequate defense to the additional circumstances of burglary and robbery. Whether that allegation has merit is of no legal consequence in this case because the jury found him guilty of first degree murder in furtherance of the commission of rape. Therefore, we limit our discussion to allegations of error affecting that single charge.

■ On the special verdict form, the jury answered yes to the following question: "Was the murder committed in the course of, in furtherance of, or in immediate flight from the

---

[1] "He, the said BRIAN [*sic*] N. KESTER, in the County of Yakima, State of Washington, on or about the 30th day of September, 1982, with premeditated intent to cause the death of another person, did shoot Barbara A. Van Vleck, thereby causing the death of Barbara A. Van Vleck, a human being, on or about September 30, 1982, and said premeditated First Degree Murder was for the purpose to conceal the commission of a crime, to–wit: Attempted First Degree Rape, and to conceal the identity of the person committing the crime;"

[2] "He, the said BRIAN [*sic*] N. KESTER, in the County of Yakima, State of Washington, on or about the 30th day of September, 1982, with premeditated intent to cause the death of another person, did shoot Barbara A. Van Vleck, thereby causing the death of Barbara A. Van Vleck, a human being, on or about September 30, 1982, and said premeditated First Degree Murder was for the purpose to conceal the commission of a crime, to–wit: Rape or Attempted Rape, and to conceal the identity of the person committing the crime; or said First Degree Murder was committed in the course of, in furtherance of, or in immediate flight from the crimes of Rape in the First or Second Degree;"

[3] "He, the said BRIAN [*sic*] N. KESTER, in the County of Yakima, State of Washington, on or about the 30th day of September, with premeditated intent to cause the death of another person, did shoot Barbara A. Van Vleck, thereby causing the death of Barbara A. Van Vleck, a human being, on or about September 30, 1982, and said premeditated First Degree Murder was for the purpose to conceal the commission of a crime, to–wit: 1° Rape, or 1° Burglary or Attempted Robbery 1°, and to conceal the identity of the person committing the crime; or said First Degree Murder was committed in the course of, in furtherance of, or in immediate flight from the crimes of Rape in the First Degree, or Burglary in the First Degree."

crime of rape in the first degree?" This finding is sufficient, standing alone, to support the jury's verdict as evidenced by RCW 10.95.020(9)(b):

A person is guilty of aggravated first degree murder if he or she commits first degree murder as defined by RCW 9A.32.030(1)(a) . . . and one or more of the following aggravating circumstances exist: . . .

(9) The murder was committed in the course of, in furtherance of, or in immediate flight from one of the following crimes: . . .

(b) Rape in the first or second degree;

Because Mr. Kester was arraigned on the first amended information November 15, 1982, 1 month before his trial began, we find he had an adequate opportunity to prepare a defense to the charge. There was no prejudice.

Mr. Kester next contends the jury was improperly instructed regarding use of the special verdict form. He argues instruction 30[4] failed to state the jury was required to make a unanimous finding on each element of each

---

[4] "Instruction 30

"If, and only if, you find the defendant guilty of premeditated first degree murder, then it will be necessary for you to return a special verdict to the following question:

"Did one of the following aggravated circumstances exist:

"Did the defendant commit the murder to conceal the commission of the crime of first degree rape or first degree burglary or attempted first degree robbery, or to protect or conceal the identity of the defendant in committing the crime? or

"Was the murder committed in the course of, in furtherance of, or in immediate flight from the crime of rape in the first degree or burglary in the first degree?

"The State must prove to you beyond a reasonable doubt, as previously defined, one or more of these aggravating circumstances. These aggravating circumstances are alternatives and only one need be proved. You must unanimously agree upon which, if any, or both, of the aggravating circumstances set out above has been proved. You will be provided with special verdict forms for each aggravating circumstance, in which you answer 'yes' or 'no'. When all of you have so agreed, fill in the special verdict forms to express your decision. The foreman must sign them and notify the bailiff who will conduct you into court to declare all your verdicts.

"The Court does not intend to comment on the evidence and the jury should not infer from the giving of this special verdict that the Court has so commented. This instruction is given to set forth all of the issues raised by the parties."

aggravating circumstance, specifically burglary, robbery and rape. Pursuant to *State v. Green*, 91 Wn.2d 431, 441, 588 P.2d 1370 (1979), *rev'd in part on reconsideration*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980), the jury could find the essential elements of rape beyond a reasonable doubt. Instruction 30, which clarified the use of the special verdict form, contained the proper burden of proof (beyond a reasonable doubt) and the necessity for a unanimous verdict. Read in conjunction with instruction 9, defining the elements of rape, any rational trier of fact could have found the essential elements of rape sufficiently proven by the State's evidence, which included the testimony of experts and investigating police. Accordingly, there was no error in the instructions submitted to the jury.

Mr. Kester next argues the trial court erred in not giving his proposed instruction on the definition of consent as a defense to the rape charge. It read:

> Consent means that at the time of the act of sexual intercourse there are actual words or conduct indicating freely given agreement to have sexual intercourse.

Mr. Kester testified before the jury the victim initiated the act of sexual intercourse by words which clearly indicated her desire to be intimate with him. The general rape instruction included the element of "forcible compulsion," which we conclude is a term of common understanding, the opposite of which is consent.

> The trial court in a criminal case is required to define technical words and expressions, but not words and expressions which are of common understanding. . . . Whether words used in an instruction require definition is necessarily a matter of judgment for the trial court.

(Citations omitted.) *State v. Castro*, 32 Wn. App. 559, 564–65, 648 P.2d 485 (1982).

*State v. Elder*, 70 Wn.2d 414, 419, 423 P.2d 533 (1967) states the applicable rule regarding the use of proper instructions:

> In passing upon the sufficiency of instructions, we are governed by the following general rules: (1) Instructions

must be considered as a whole. (2) Each party is entitled to instructions on his theory of the case which is sustained by substantial evidence. (3) The court need not give amplified instructions, if the instructions given are broad enough to permit argument. (4) The court's instructions should contain general statements of the applicable law. (5) Instructions are sufficient if each party can argue satisfactorily to the jury his theory of the case.

(Citations omitted.) Applying these rules to the instructions submitted and to Mr. Kester's proposed instruction, we conclude he had ample opportunity under instruction 9 to argue his theory of consent as a defense to the element of forcible compulsion. If the jury had chosen to believe Mr. Kester's testimony it could not have found him guilty of rape. Obviously, the jury considered his testimony but chose to believe the experts and the investigating officers, finding him guilty of rape on the special verdict form. The court did not err in refusing to give the proposed instruction on consent.

Mr. Kester next asks this court to find RCW 10.95–.020(7)[5] unconstitutionally vague. It is unnecessary to address this argument because the conviction by the jury under RCW 10.95.020(9)(b), is sufficient by itself to support the jury's verdict.

Mr. Kester argues the court erred in admitting four photographs which he contends were too gruesome. These photographs show the nude body of the victim and a closeup of the victim's face which had blood upon it, apparently emanating from the bullet wound in the head.

The standard for admission of photographs is established in *State v. Adams,* 76 Wn.2d 650, 655, 458 P.2d 558 (1969), *rev'd on other grounds,* 403 U.S. 947 (1971), where the test to be applied to determine admissibility is whether the probative value outweighs any potential prejudicial

---

[5]RCW 10.95.020(7) provides:

"The person committed the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime;"

effect. The fact the photographs may be unpleasant does not preclude their admissibility.

The four photographs were chosen by the prosecution's experts to illustrate their testimony regarding the paper tissues found next to the body, the exit wound of the bullet on the right breast, the eye injury and the bruises.

> The admissibility of photographs is generally within the sound discretion of the trial court, and the trial court's ruling will not be disturbed on appeal, absent the showing of abuse of discretion.

*State v. Crenshaw*, 98 Wn.2d 789, 806, 659 P.2d 488 (1983) (citing *State v. Adler*, 16 Wn. App. 459, 465, 558 P.2d 817 (1976)). We have reviewed the photographs and find no abuse of discretion.

Mr. Kester also assigns error to the admission of exhibit 53, a black and white videotape of approximately 5 minutes' duration, which showed the scene and the body before they were disturbed by the investigating team. The tape was narrated by a detective and viewed by the judge prior to showing it to the jury; we also have reviewed it. Again we find there was no abuse of discretion.

Finally, Mr. Kester argues he was prejudiced by the presence of cameras in the courtroom, because their presence was a constant reminder to the jurors of the community's desire to avenge the death of the victim. He cites *State v. Collins*, 50 Wn.2d 740, 314 P.2d 660 (1957); *Federated Publications, Inc. v. Kurtz*, 94 Wn.2d 51, 615 P.2d 440 (1980); and *Cohen v. Everett City Coun.*, 85 Wn.2d 385, 535 P.2d 801 (1975), all of which are distinguishable. *Collins* concerns the exclusion of spectators from a trial in order to preserve the decorum of the courtroom. *Kurtz* considered the issue of the presence of the press at a suppression hearing. *Cohen* was a civil case where a transcript of the license revocation proceedings was sealed.

We find *State v. Wixon*, 30 Wn. App. 63, 72–73, 631 P.2d 1033 (1981) dispositive:

> A defendant is not denied due process merely because his trial is televised. . . .

. . .

> To demonstrate prejudice in a specific case a defendant must show something more than juror awareness that the trial is such as to attract the attention of broadcasters. *Murphy* v. *Florida,* 421 U.S. 794, 800, [44 L. Ed. 2d 589, 95 S. Ct. 2031] (1975).

Mr. Kester has failed to produce any specific evidence of prejudice. There is no allegation the camera crew did not comply with the Bench–Bar–Press Guidelines mandated by the trial court. Therefore, we find no error in allowing the cameras into the courtroom.

The judgment of the Superior Court is affirmed.

MUNSON, C.J., and THOMPSON, J., concur.

Review denied by Supreme Court August 10, 1984.