# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 73928-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| WILLIAM RALPH SMITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: May 22, 2017 |
| | ) | |

MANN, J. — Jeremy McClellan died of a stab wound after a fight with William Smith. Smith was charged with murder in the second degree. A jury acquitted Smith of the murder charge but found him guilty of first degree manslaughter. Smith appeals his conviction and argues that the trial court erred by instructing the jury that justifiable homicide was a defense to the charge of murder in the second degree but not a defense to the charge of manslaughter. Smith argues also that at sentencing, the court improperly calculated his offender score by including an out-of-state conviction without sufficient evidence supporting the conviction. We disagree that the evidence of the out-of-state conviction was insufficient. However, because the trial court erred in failing to instruct the jury that justifiable homicide is a defense to manslaughter, we reverse Smith's conviction for manslaughter and remand for a new trial.

I

Smith lived with his girlfriend, Chena Fisher, in a trailer on Ron White's property. White was in the process of trying to evict Smith because Smith failed to make rent payments.

On March 21, 2015, several of White's acquaintances visited him at his trailer, which was down the hill from Smith's trailer. The visitors included Jeremy McClellan. At some point Smith also visited White's trailer where he met McClellan for the first time. Eventually, Smith returned to his trailer.

Several times during the night, McClellan showed up at Smith's trailer, knocking loudly on the door and shouting. Smith ignored McClellan initially, then opened the door and told McClellan he was spending time with Fisher. The final time, McClellan shouted at Smith that he wanted a cigarette. Smith went outside to talk to McClellan, followed shortly thereafter by Fisher with her dog. Fisher testified that she saw McClellan holding an axe, and saw him "flinch" toward Smith. She did not see McClellan raise the axe, but he moved quickly toward Smith in a threatening manner. She heard McClellan tell Smith in a threatening tone, "the difference between you and I is I get my money." Fisher briefly left the scene to chase her dog. Fisher next saw both Smith and McClellan wrestling. She then saw McClellan fall to the ground and let out a loud growling noise before running toward White's trailer.

After hearing screams coming from White's trailer, Smith told Fisher to go to the neighbors and call 911. Fisher explained to the 911 operator that a person who had come to their trailer wielding an axe was now critically wounded. Emergency medical workers arrived, but McClellan died at the scene.

-2-

The medical examiner determined that McClellan died from a stab wound to the neck. The wound could have been caused by either a knife or a broken bottle. There were also wounds on his back that were caused by a knife. Although Smith did not mention having used a knife to defend himself, one of his kitchen knives was later discovered to have McClellan's blood on it.

Smith was charged with murder in the second degree.

At trial, Smith requested the jury instructions include an instruction on the lesser-included offenses of first and second degree manslaughter. Smith proposed using the definition for first and second degree manslaughter set out in WPIC 28.01 and WPIC 28.05, including the explanation that justifiable homicide was a defense to both. 11 WASHINGTON PRACTICE PATTERN JURY INSTRUCTIONS: CRIMINAL 28.01, 28.05 (4th ed. 2016) (WPIC).[1] Smith also requested a jury instruction, based on WPIC 16.02, defining the defense of justifiable homicide for both murder and manslaughter.[2]

As the trial progressed, the parties and court discussed and agreed on jury instructions that included the proposed WPIC 28.01 and 28.01 definitions for first and second degree manslaughter (including the defense for justification), and the proposed WPIC 16.02 definition for justifiable homicide (including both murder and manslaughter). The parties and court also agreed to modify the "to convict" instructions for second

---

[1] WPIC 28.01 provides: "A person commits the crime of manslaughter in the first degree when he or she recklessly causes the death of another person [unless the killing is [excusable] [or] [justifiable]]. The "notes on use" state that the bracketed materials should be used "if the defense of excusable or justifiable homicide is in issue."

WPIC 28.05 provides: "A person commits the crime of manslaughter in the second degree when, with criminal negligence, he or she causes the death of another person [unless the killing is [excusable] [or] [justifiable]]." The notes on use state that the bracketed materials should be used "if the defense of excusable or justifiable homicide is in issue."

[2] WPIC 16.02 provides, in part: "It is a defense to a charge of [murder] [manslaughter] that the homicide was justifiable as defined in this instruction."

degree murder and first and second degree manslaughter to include language requiring the jury to find that the death was not justifiable.

Then, late in the process, the State requested that the instructions be changed, arguing, "justification is not something that should be considered with manslaughter." The State maintained the court needed "to make some modifications to make it so that manslaughter . . . does not allow justification." The State agreed that Smith had presented sufficient evidence to support a defense of justification, and the instruction was therefore warranted for the second degree murder charge. The State claimed, however, that a justification defense was legally unavailable for manslaughter.

The court was hesitant to make any changes, and pointed out that the State's late request was unacceptable. Defense counsel said, "I'm not totally in agreement" following up saying "I [mean] intellectually it makes sense. Where I get hung up is if the jury feels that Smith's actions are justifiable, they should not proceed in any way shape or form to the manslaughter 'to convict instruction'" and "I frankly don't see what the detriment is to the State with the instructions as they exist." After continued discussions about the change, defense counsel again raised concerns with the change:

> [DEFENSE COUNSEL]: Okay. And I will note, Your Honor, that WPIC 16.02 specifically says "it is a defense to charge of 'murder' 'manslaughter.'
> THE COURT: Yeah. But that's not what the case law says.
> [DEFENSE COUNSEL]: Well, I mean the case law, State v. Hughes is a 1986 case. They haven't changed the WPIC in 39 years?
> THE COURT: That wouldn't surprise me because Bergeson is a 92 case.
> [DEFENSE COUNSEL]: Okay.

The trial court eventually agreed with the State and removed the justification element from the manslaughter "to convict" instruction, and removed manslaughter from

the justifiable homicide instruction. After the court and the prosecutor determined which changes would be made, the court asked for defense counsel's response:

> [DEFENSE COUNSEL]: Well, I agree that's what the Court is ruling, that issue, that instruction. I'm still hung up on the fact that that's not what the WPIC says.
> THE COURT: I know. But I think—I'm convinced that the case law means we need to adjust the WPIC in order to meet those requirements. I think we had it covered otherwise, but I'd rather be safe.[3]

When the court later asked for objections, neither party raised any further objections.

The jury found Smith not guilty of murder in the second degree, but guilty of first degree manslaughter. Smith moved for a new trial on the basis that the jury was wrongly denied the opportunity to acquit Smith of manslaughter based on justifiable homicide. After argument, the trial court expressed reservations over the instructions:

> I'm very frustrated that we didn't have time, because this is the kind of analysis that I spent about three hours on yesterday is what should have been done before the trial before we got to the point of dealing with the jury instructions, but it wasn't done, because we didn't have this issue raised to the Court at that time. It was raised to the Court [by the State] at the last possible minute . . . .
>
> So what we should have done, I think, in hindsight is I think Instruction 19 should have said it's a defense to Murder in the Second Degree, and manslaughter because that is what is in the WPICs. They're both bracketed phrases, and then we would have probably covered all of the bases and I think we would have been in good enough shape.

(Emphasis added.)

Despite recognizing that the jury should have been instructed that justifiable homicide was a defense to manslaughter, the trial court denied Smith's motion for a

---

[3] WPIC 16.02 provides: "Justifiable Homicide—Defense of Self and Others: It is a defense to a charge of [murder] [manslaughter] that the homicide was justifiable as defined in this instruction."

new trial. The court adopted the position urged by the State, that the instructions were "clear enough." The court continued, however, to express doubt:

> So I'm going to deny the motion for a new trial on that basis. I'm not absolutely certain about that, but I'm certain enough that I think that's the decision I will make at this time.

Smith appeals.

## II

The State argues first that we should not consider Smith's challenge to the jury instructions because it was either invited error or waived. We disagree.

### A. Invited Error

"The basic premise of the invited error doctrine is that a party who sets up an error at trial cannot claim that very action as error on appeal and receive a new trial." State v. Hood, 196 Wn. App. 127, 131, 382 P.3d 710 (2016); State v. Momah, 167 Wn.2d 140, 153, 217 P.3d 321 (2009). Thus, for example, a party may not request a particular instruction and later complain on appeal that the requested instruction was given, even if the error is of constitutional magnitude. Hood, 196 Wn. App. at 131. State v. Studd, 137 Wn.2d 533, 546, 973 P.2d 1049 (1999); City of Seattle v. Patu, 147 Wn.2d 717, 720, 58 P.3d 273 (2002). In determining whether the invited error doctrine applies, our courts consider "whether the defendant affirmatively assented to the error, materially contributed to it, or benefited from it." In re Pers. Restraint of Coggin, 182 Wn.2d 115, 119, 340 P.3d 810 (2014). The doctrine requires "'affirmative actions by the defendant.'" Hood, 196 Wn. App. at 135 (quoting In re Pers. Restraint of Thompson, 141 Wn.2d 712, 724, 10 P.3d 380 (2000)).

Here, there is nothing in the record that demonstrates an affirmative action or even assent by Smith. Smith requested that the defense of justifiable homicide be included in the "to convict" instructions for first and second degree manslaughter. The State, not Smith, requested the last minute change to the instructions. Smith clearly objected to the changes. Smith did not invite error. Hood, 196 Wn. App. at 135.

B. Failure to Object

The State next argues that Smith did not raise a formal objection to the instructions and therefore waived his objection under CrR 6.15(c) and RAP 2.5(a).

"A party is required to object to an erroneous instruction in order to afford the trial court the opportunity to correct the error." CrR 6.15(c); State v. Jensen, 149 Wn. App. 393, 398, 203 P.3d 393 (2009). Any objections to the instructions, as well as the grounds for the objections, must be put on the record to preserve review. Hood, 196 Wn. App. at 134.

In this case, while Smith did not enter a formal objection to the edited proposed instructions to remove the justifiable homicide defense for manslaughter, the court was well aware of Smith's objection. Defense counsel repeatedly informed the court that the new instructions did not match the WPICs and should not be changed. The trial court, concerned about the time it would take to delve into the issue, made a ruling without allowing any further research. The trial court had multiple opportunities to remedy the error. After the verdict, Smith again, provided the court an opportunity to correct its error by moving for a new trial on the basis that the instructions were incorrect. This issue was properly preserved for appeal.

Moreover, even if the error was not preserved, the jury instructions, as given, eliminated the State's burden of proving lack of justification for manslaughter in the first and second degree. Instructing the jury in a manner that relieves the State of its burden of disproving self-defense is an error of constitutional magnitude that a defendant can raise for the first time on appeal. State v. Byrd, 125 Wn.2d 707, 714, 887 P.2d 396 (1995); State v. McCullum, 98 Wn.2d 484, 488, 656 P.2d 1064 (1998).

III

Because Smith's claim is properly before us, we turn to the merits. Smith argues that the trial court erred in failing to instruct the jury that the defense of justification applied to first and second degree manslaughter. The State concedes the error. We agree.

Where a trial court has refused to give a justifiable homicide or self-defense instruction, the standard of review depends on whether the refusal was based on fact or law. State v. Brightman, 155 Wn.2d 506, 519, 122 P.3d 150 (2005). If the trial court's refusal was based on a factual dispute over whether there was sufficient evidence to support the instruction, we review for abuse of discretion. Brightman, 155 Wn.2d at 519. But if the court refused to give the instruction based on a ruling of law, the standard of review is de novo. Brightman, 155 Wn.2d at 519. Because the trial court here found that there was evidence supporting a self-defense instruction, our review is de novo.

The defense of justifiable homicide is available for both murder and manslaughter. State v. Hanton, 98 Wn.2d 129, 133, 614 P.2d 1280 (1980) (proof of self-defense negates the recklessness in first degree manslaughter); State v. McCullum,

-8-

98 Wn.2d 484, 494, 656 P.2d 1064 (1983); State v. Camara, 113 Wn.2d 631, 639, 781 P.2d 483 (1989), overruled on other grounds by State v. W.R., Jr., 181 Wn.2d 757, 336 P.3d 1134 (2014); WPIC 16.02. Pursuant to RCW 9A.16.050:

> Homicide is . . . justifiable when committed either:
>
> (1) In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother, or sister, or of any other person in his or her presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished; or
>
> (2) In the actual resistance of an attempt to commit a felony upon the slayer, in his or her presence, or upon or in a dwelling, or other place of abode, in which he or she is.

Once evidence of self-defense is presented, the defendant is entitled to have the jury instructed on the State's burden to prove beyond a reasonable doubt that the homicide was not justifiable. McCullum, 98 Wn.2d at 499-500.

The trial court erred in failing to instruct the jury that the defense of justification applied to first and second degree manslaughter.

IV

On appeal, the State concedes that a justifiable homicide instruction may be available for both murder and manslaughter when the evidence is sufficient to support the factual and legal basis of the defense. The State argues, however, that a justifiable homicide instruction was not warranted because either there was insufficient evidence to support the defense, or because Smith claimed that the injury was the result of an accident. The State argues finally that any error was harmless. We disagree.

A.    Sufficiency of the Evidence

The defendant is entitled to have the jury instructed on his theory of the case if there is evidence to support the theory. State v. Fisher, 185 Wn.2d 836, 848-49, 374 P.3d 1185 (2016). To prove justifiable homicide, there must be credible evidence that (1) the defendant subjectively feared that he was about to be injured, (2) this belief was objectively reasonable, (3) no more force was used than was necessary, and (4) the defendant was not the aggressor. State v. Callahan, 87 Wn. App. 925, 929, 943 P.2d 676 (1997). The trial court must view the evidence in the light most favorable to the defendant. Fisher, 185 Wn.2d at 849. "'The trial court is justified in denying a request for [an affirmative defense] instruction only where no credible evidence appears in the record to support [it].'" Fisher, 185 Wn.2d at 849 (quoting McCullum, 98 Wn.2d at 488). The evidence may come from whatever source tends to show that the defendant is entitled to the instruction. Fisher, 185 Wn.2d at 849. The defendant is entitled to the benefit of all the evidence, including facts inconsistent with his own testimony. Callahan, 87 Wn. App. at 933; Fisher, 185 Wn.2d at 849.

At trial, Smith's primary theory of the case was justifiable homicide. Evidence at trial demonstrated that McClellan was high on methamphetamines, which increases aggressiveness, and that he was angry on the night of his death. McClellan was a large man and much younger than Smith. McClellan went to Smith's trailer three times during the night, banged on the side of the trailer, and yelled at Smith to come out. When Smith went outside the third time, McClellan was wielding an axe. McClellan yelled at Smith to leave and "flinched" towards him with an axe. McClellan then took off his watch, put it in his pocket, and punched Smith, causing "goose eggs" on Smith's head.

While Smith told the police that a broken bottle caused McClellan's injuries, there was evidence that one of Smith's kitchen knives also had McClellan's blood on it. The medical examiner believed a knife had caused some of the injuries, including the stab wound that killed McClellan.

Based on the evidence presented at trial, the trial court ruled there was sufficient evidence to support a justifiable homicide instruction. The State agreed. The evidence was sufficient to demonstrate Smith subjectively feared McClellan, the fear was objectively reasonable, the using of a knife or a beer bottle was a necessary amount of force, and Smith was not the aggressor. While the trial court erred in failing to give the requested instruction, it did not err in concluding that there was credible evidence to support Smith's claim of self-defense.

The State argues alternatively that Smith was not entitled to the justifiable homicide instructions because he initially told the police that McClellan's fatal neck wound was the result of an accident. While it may be true that self-defense is not available where a defendant "consistently testifies that the fatal blow was accidental," State v. Hendrickson, 81 Wn. App. 397, 400, 914 P.2d 1194 (1996), it is also true that "the law does not require an explicit statement of intent." Hendrickson, 81 Wn. App. at 401. Smith is entitled to the benefit of all the evidence, including facts inconsistent with his own testimony. Callahan, 87 Wn. App. at 933; Fisher, 185 Wn.2d at 849.

Smith did not testify at trial. Instead, Smith's primary theory of the case was justifiable homicide. As discussed above, he presented sufficient evidence at trial that conflicted with Smith's initial claim that the stabbing was accidental. After reviewing the entire record in the light most favorable to Smith, Smith was entitled to the justification

-11-

defense because, despite Smith's initial conflicting statement, there is credible evidence that Smith stabbed McClellan in the neck in the act of self-defense.

B.    Harmless Error

To satisfy the constitutional demands of a fair trial, the jury instructions, when read as a whole, must correctly tell the jury of the applicable law, not be misleading, and permit the defendant to present his theory of the case. State v. O'Hara, 167 Wn.2d 91,105, 217 P.3d 756 (2009) (citing State v. Mills, 154 Wn.2d 1, 7, 109 P.3d 415 (2005)). When the record discloses an error in an instruction "given on behalf of the party in whose favor the verdict was returned, the error is presumed to have been prejudicial, and to furnish ground for reversal, unless it affirmatively appears that it was harmless." State v. Wanrow, 88 Wn.2d 221, 237, 559 P.2d 548 (1977); See also State v. Barry, 183 Wn.2d 297, 303, 352 P.3d 161 (2015). The error is harmless if the appellate court is convinced beyond a reasonable doubt that it had no effect on the outcome of the trial. State v. Hoffman, 116 Wn.2d 51, 97, 804 P.2d 577 (1991); Barry, 183 Wn.2d at 303. The State bears the burden of demonstrating that the error was harmless. Barry, 183 Wn.2d at 303.

Because the State requested the amended manslaughter instructions, and the verdict came out in the State's favor, the error is presumed to be prejudicial. The State has the burden of showing that the error did not affect the outcome of the trial beyond a reasonable doubt.

In Washington, the absence of a justifiable homicide element in the "to convict" instruction is not inherently prejudicial so long as there exists a separate instruction defining justifiable homicide and explaining that it is the State's burden to prove that the

-12-

homicide was not justifiable. Hoffman, 116 Wn.2d at 109. Here, however, the "to convict" instruction for second degree murder included an element requiring the jury to find the homicide was not justifiable, but the "to convict" instruction for manslaughter did not include the justifiable homicide element. Adding to the confusion, while the instructions included a separate instruction defining justifiable homicide, it stated only that "it is a defense to the charge of murder in the second degree that the homicide was justifiable as defined in this instruction." (Emphasis added.) The instruction left out that justifiable homicide was also a defense to the charge of manslaughter. The instructions, when read as a whole, conveyed to the jury exactly what the State intended: that justification was not a defense to manslaughter. The instructions misstated the law to the jury and were misleading.

The State argues that this error was remedied by the concluding instructions, which correctly told the jury that a finding of justifiable homicide as a defense for second degree murder meant finding Smith not guilty "on verdict forms B and C [manslaughter in the first and second degree] as well." However, the instruction was insufficient because this court cannot know why the jury found Smith not guilty of second degree murder.

By finding Smith not guilty of second degree murder, we can assume that the jury found that Smith used a knife or a beer bottle on McClellan without forming the necessary intent to kill. It is impossible, however, to know if the jury considered justifiable homicide when deciding on intent. The State argues that because justifiable homicide negates intent, the jury necessarily considered justification in finding no intent. Smith argues, and the trial court agreed, that the jury could have found Smith not guilty

-13-

of second degree murder for a different reason and then moved on to manslaughter with no opportunity under the instructions to apply the justifiable homicide defense to the lesser crimes. The burden is on the State to prove "beyond a reasonable doubt" that the incorrect instructions did not affect to outcome. The State has not met its burden here.

The trial court committed reversible error by removing any indication in the jury instructions that justifiable homicide was a defense to manslaughter. Accordingly, we reverse Smith's conviction for manslaughter in the first degree. The State may retry Smith for manslaughter, but may not retry him on the murder charge of which he was acquitted. U.S. Const. amend. V; State v. Linton, 156 Wn. 2d 777, 783, 132 P.3d 127 (2006).[4]

V

Smith argues also that the trial court improperly calculated his offender score by including an out-of-state conviction without sufficient evidence supporting the conviction. We disagree.

The Sentencing Reform Act creates a grid of standard sentencing ranges calculated according to the seriousness level of the crime and the defendant's offender score. State v. Ford, 137 Wn.2d 472, 479, 973 P.2d 452 (1999). A defendant's offender score is generally calculated by adding together the defendant's current offenses and the prior convictions. State v. Hunley, 175 Wn.2d 901, 908-09, 287 P.3d 584 (2012); RCW 9.94A.525. The State bears the burden of proving criminal history,

---

[4] Smith assigned error to the trial court's admission of extrinsic evidence of prior inconsistent statements made by Fisher to police detectives after she had already admitted to making the statements previously at trial. As we hold that this case must be reversed and remanded for a new trial, we do not address this issue.

-14-

including comparable out-of-state convictions, as a matter of due process. U.S. Const. amend. XIV; Hunley, 175 Wn.2d at 917.

The State must establish the conviction's existence by a preponderance of the evidence. Ford, 137 Wn.2d 480. "The best method of proving a prior conviction is by the production of a certified copy of the judgment, but 'other comparable documents of record or transcripts of prior proceedings' are admissible to establish criminal history." In re Adolph, 170 Wn.2d 556, 568-69, 243 P.3d 540 (2010) (quoting Ford, 137 Wn.2d at 480). The State's burden is "not overly difficult to meet" and may be satisfied by evidence that bears some "minimum indicia of reliability." Ford, 137 Wn.2d at 480-81.

At sentencing, defense counsel argued the offender score was five. The court concluded that Smith's offender score was six, because it chose to include a 2003 California conviction for possession of a controlled substance. The State was unable to obtain a certified copy of Smith's California judgments, but was able to provide a "disposition of arrest and court action" form that states Smith's name and birthdate, and an arrest date of September 2, 2000. The form then lists three charges, including "11377(A) Poss. Controlled Substance." The State also provided certified fingerprint booking cards from the Lake County Sheriff's Office, and had Officer Ben Vodopich of the Bellingham police department testify that he had analyzed the fingerprints to insure they matched Smith, and that he had reviewed and matched the criminal history.

The court found that the charge for possession of a controlled substance in 2003 related to one of the fingerprint booking cards. The relevant fingerprint booking card stated Smith's name, date of birth, and the charge "11377(A)" for "poss controlled substance." The card has the box checked for "con" meaning conviction, with the

disposition date of August 22, 2003. Officer Vodopich testified that he had matched the fingerprint to Smith. In the end, the court found the evidence demonstrated "some minimal indicia of reliability beyond mere allegation."

This evidence was sufficient, even without a certified copy of judgment, for the trial court to find by a preponderance of the evidence that the prior conviction existed. The evidence consists of official government records provided by the California Sheriff's Department, and are sufficiently detailed to describe the crime and the conviction. See Adolph, 170 Wn.2d at 570 (holding that a Department of Licensing driving record abstract and DISCIS criminal history are comparable to a certified judgment and sentence). The combination of these two records showing an arrest and later conviction of possession of a controlled substance was more than enough to demonstrate the minimum indicium of reliability necessary for the State to meet the preponderance of the evidence burden.

## CONCLUSION

Smith's conviction for first degree manslaughter is reversed and remanded for a new trial.

WE CONCUR:

_____

_____

_____