200 P.3d 287 (2009)
STATE of Washington, Respondent,
v.
David Michael BUZZELL, Appellant.
No. 60012-5-I.
Court of Appeals of Washington, Division 1.
February 9, 2009.
*289 Sarah McNeel Hrobsky, Washington Appellate Project, Jason Brett Saunders, Gordon & Saunders PLLC, Seattle, WA, David Michael Buzzell, Washington Corrections Ctr., Shelton, WA, for Appellant.
Tod James Bergstrom, Attorney at Law, Seattle, WA, for Respondent.
APPELWICK, J.
¶1 A jury convicted David Buzzell of one count of indecent liberties. Buzzell presented evidence that the sexual contact was consensual. A criminal defendant is entitled to have the court instruct the jury upon his theory of the case, if sufficient evidence supports this theory. Buzzell was entitled to jury instructions on consent and the burden of proving consent. While it was error to deny the request for the instructions, the error was harmless. We affirm.

FACTS
¶ 2 In September 2006, David Buzzell temporarily moved into the home of his friend Melissa Morrison. At Morrison's residence, Buzzell slept on a mattress on the floor of the living area. Morrison had her own bedroom.
¶ 3 On the night of September 24, 2006, Morrison retired to her bedroom at 9:30 p.m., where she read a book while reclining in bed. At some point, Buzzell entered Morrison's bedroom and sat on her bed, near her feet. According to Morrison, Buzzell pointed to her breasts and said, "Show them to me. I want to see them." She refused. Buzzell again demanded to see Morrison's breasts, and she said, "No." At trial, Morrison recalled that during this encounter, Buzzell slurred his words a little and that he did not speak clearly. Buzzell then repeated, "Show me. I want to see them," and then removed Morrison's book from her hands. Buzzell attempted to untuck the blankets covering Morrison, who pushed his hands away. Buzzell told Morrison, "Just let me do this. Let me entertain you." Again, Morrison testified that she "kept telling him no." Buzzell successfully pulled down the covers, and pulled up her shirt, and moved to straddle Morrison. Morrison testified that Buzzell pinned her arms down, restraining them, and then put his mouth over her nipples. Morrison recalled that Buzzell stated, "If you didn't want this, you would fight harder." According to Morrison, she fought and continued to tell Buzzell no. Buzzell then pulled Morrison's underwear, tearing them. Buzzell then attempted to have sexual intercourse with Morrison. Buzzell did not have a sufficient erection and was therefore unable to penetrate Morrison. Morrison was able to grab a phone and call 911, but Buzzell "took it away." Because Buzzell was concentrating on the phone, Morrison was able to "move around and off the bed." Wearing only her t-shirt, Morrison headed to the front door. Before leaving, Morrison picked up a coat from the floor and wrapped it around her waist. Morrison then proceeded to go to a local fire station, located approximately one-half block from her house, for help.
*290 ¶ 4 In contrast, at trial, Buzzell stated that the sexual contact between him and Morrison on September 24, 2006 was consensual. Buzzell testified that he spent the day watching TV and visiting a friend. In the evening, his friend Shayne Pendleton came over and the two played video games, watched TV, and drank several beers. After Pendleton left, Buzzell continued to play with the computer and watch TV. At some point, he laid down on his mattress. Unable to sleep, Buzzell went back to the computer room to smoke a cigarette and noticed Morrison was still awake, reading in bed. Buzzell entered Morrison's room to talk, and sat down on the end of her bed. Buzzell testified that the two made small talk. Eventually, the "talking turned into hugging, turned into like hand holding, turned into cuddling." Buzzell testified that he then "started playing with her breasts." Buzzell said that Morrison never asked him to stop and no physical resistance took place. He testified that "I was also looking up into her face. It seemed like she was enjoying herself. And it was kind of weird. The light in her eyes seemed to fade for a second or two like she blanked out or something."[1] Buzzell stated that Morrison seemed disoriented and shocked. Morrison picked up the phone and dialed 911. Morrison then held the phone out to him. Buzzell ended the call. Morrison got off the bed and ran out the door. According to Buzzell, he never restrained her and the sexual contact was consensual.
¶ 5 On September 24-25, 2006, Dean DeAlteriis, a lieutenant with the Eastside Fire and Rescue Department, was stationed at the North Bend substation. Shortly after midnight on September 25, the doorbell of the station rang repeatedly. Lt. DeAlteriis went to the door and found Morrison "upset, distraught, crying, not dressed appropriate." Morrison was dressed only in a t-shirt and had a coat wrapped around her waist. After a preliminary evaluation and investigation, DeAlteriis requested a King County Sheriff's officer. Morrison was taken by a deputy sheriff to Harborview. A sexual assault kit was performed on Morrison, which included swabs from her left and right breast. The sample taken from the left breast matched Buzzell's DNA profile. Testing on swabs taken from other locations was inconclusive.
¶ 6 The State charged Buzzell, in King County, with one count of attempted rape in the second degree, or, in the alternative, one count of indecent liberties. At trial, Buzzell proposed six jury instructions including one on the elements of rape in the third degree, one that defined consent, and one for consent as an affirmative defense to both charges. The trial court did not give Buzzell's proposed instruction on rape in the third degree or either instruction on consent. The jury found Buzzell guilty of the crime of indecent liberties. Buzzell was sentenced to 60 months in prison and ordered to pay a victim penalty assessment in the amount of $500.00. Buzzell appeals, assigning error to the trial court's refusal to give his proposed jury instructions.

DISCUSSION

I. Consent Instruction
¶ 7 Buzzell contends that the trial court deprived him of his constitutional right to present his theory of the case when it refused to give his proposed jury instructions on consent. Washington courts have not before addressed the issue of whether consent is an affirmative defense to a charge of indecent liberties.
¶ 8 A defendant in a criminal case is "entitled to have the trial court instruct upon [his] theory of the case if there is evidence to support the theory." State v. Hughes, 106 Wash.2d 176, 191, 721 P.2d 902 (1986). "In evaluating whether the evidence is sufficient to support a jury instruction on an affirmative defense, the court must interpret it most strongly in favor of the defendant and must not weigh the proof or judge the witnesses' credibility, which are exclusive functions of the jury." State v. May, 100 Wash.App. 478, 482, 997 P.2d 956 (2000). A refusal to give a requested jury instruction *291 constitutes reversible error where the absence of the instruction prevents the defendant from presenting his theory of the case. State v. Jones, 95 Wash.2d 616, 623, 628 P.2d 472 (1981).
¶ 9 Buzzell was charged with one count of violation of the indecent liberties statute, RCW 9A.44.100, which provides:
(1) A person is guilty of indecent liberties when he or she knowingly causes another person who is not his or her spouse to have sexual contact with him or her or another: (a) By forcible compulsion;
(2) ... (b) Indecent liberties by forcible compulsion is a class A felony.
¶ 10 Buzzell proposed that the court give a definition of consent based on the criminal Washington Pattern Jury Instructions, section 45.04, which states "that at the time of the act of sexual contact there are actual words or conduct indicating freely given agreement to have sexual contact." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS-CRIMINAL 45.04 at 835 (3d ed.2008). Buzzell also proposed an instruction relating to the burden of proof on the element of consent. The instruction stated:
The burden is on the defendant to establish the defense of consent by a preponderance of the evidence.
Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that the proposition on which that party has the burden of proof is more probably true than not true.
If you find the defendant has established the defense of consent, it will be your duty to return a verdict of not guilty.
¶ 11 Based on State v. Camara, Buzzell urges this court to recognize consent as an affirmative defense to a charge of indecent liberties. In State v. Camara the Washington Supreme Court held that consent is a valid defense to a charge of rape, because "nonconsent traditionally has been the essence of the crime of rape." 113 Wash.2d 631, 636, 781 P.2d 483 (1989). Moreover, while the language of rape statutes use the term forcible compulsion, nonconsent remains an element of rape. Id. Consent and forcible compulsion are "conceptual opposites." Id. at 637, 781 P.2d 483; accord State v. Kester, 38 Wash.App. 590, 594, 686 P.2d 1081 (1984).[2] The court concluded that, based on the statute and the Washington Constitution, the burden of proving the defense of consent lies with the defendant. Id. at 640, 686 P.2d 1081. Because consent is not an element of the crime of rape, but merely a defense, the burden of proof lies with the defendant. Camara, at 640, 781 P.2d 483.
¶ 12 In 1993, after the Camara opinion was filed, the Washington legislature amended the statutory definition of consent to apply in cases of sexual contact as well as cases of sexual intercourse. RCW 9A.44.010(7). Sexual contact is an element of the crime of indecent liberties. RRCW 9A.44.100. "`Consent' means at the time of the act of sexual intercourse or sexual contact there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual contact." RCW 9A.44.010(7). Moreover, like rape in the first and second degrees, a person is guilty of indecent liberties when "he or she knowingly causes another person who is not his or her spouse to have sexual contact with him or her or another: (a) By forcible compulsion." RCW 9A.44.100(1)(a). Given these amendments, we hold that Camara's reasoning with respect to rape and consent should be applied equally to indecent liberties where a criminal defendant claims that sexual contact was consensual. Consent negates forcible *292 compulsion; the burden to establish consent is on the defendant.
¶ 13 This does not end our analysis, however, we must decide whether the jury instructions adequately informed the jury. At trial, Buzzell presented a defense that the sexual contact with Morrison was consensual. He testified that Morrison consented to the sexual contact, but became confused after having a seizure. He did not testify that Morrison made statements of consent, but rather, that the two hugged, hand held, and cuddled before Buzzell began playing with her breasts and otherwise engaging in sexual contact. Buzzell said that Morrison never asked him to stop and no physical resistance took place. If, as Buzzell argues, Morrison's conduct indicated her consent, then there was no resistance to be overcome by physical force, and he did not knowingly cause forcible sexual contact. Buzzell established a factual basis that entitled him to jury instructions supporting his theory of the case. He was denied the necessary consent and burden of proof instructions. This was error, and reversible error if it prevented him from arguing his theory of the case.
¶ 14 But, the State argues that the error was harmless, because, if instructed properly, any reasonable jury would have reached the same result. The test for determining whether a constitutional error is harmless is whether it appears "`beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Neder v. U.S., 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting Chapman v. Cal., 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); see also State v. Easter, 130 Wash.2d 228, 242, 922 P.2d 1285 (1996) (court finds constitutional error harmless only if convinced beyond a reasonable doubt that any reasonable jury would reach the same result without the error). The State argues that Buzzell was able to argue consent as his theory of the case, even if no instruction was given. During closing argument, Buzzell's attorney told the jury that, "[y]ou heard a lot about consent and was this consensual sexual contact. And that's what Mr. Buzzell told you it was. There's no definition of consent in this packet of instructions, but, again, it's really a common sense thing." The prosecutor also discussed consent in his closing by summarizing Buzzell's testimony. He did not address the legal consequences if the jury found that Morrison consented.
¶ 15 Buzzell presented his theory of the case through his own testimony and counsel's argument that the victim had consented. Morrison argued that he forced her and she resisted. The case turned on which testimony the jury believed. Even with the missing jury instruction, this case turned on whether the jury believed Buzzell; his testimony was the only way he could meet his burden of establishing consent. The jury could not have accepted his testimony and returned a conviction. The instructional error was harmless.

II. Lesser Offenses
¶ 16 Buzzell claims he was entitled to a jury instruction on the lesser offense of attempted rape in the third degree. Here, the jury was instructed on the crimes of rape in the second degree and indecent liberties. But, Buzzell contends that third degree rape is a lesser degree offense of rape in the second degree and a lesser included offense of indecent liberties.
¶ 17 According to State v. Workman, a defendant is entitled to an instruction on a lesser included offense, if 1) each of the elements of the lesser offense must be an element of the offense charged; and 2) the evidence must support an inference that the lesser crime was committed. 90 Wash.2d 443, 447-448, 584 P.2d 382 (1978). Where a defendant is charged with an offense that is divided by inferior degrees of a crime, the jury may find the defendant not guilty of the charged offense, but guilty on any lesser degrees of the crime. RCW 10.61.003; RCW 10.61.006. An instruction on a lesser offense is proper only if there is "sufficient evidence to support an inference that the lesser included crime was committed." State v. Speece, 115 Wash.2d 360, 362, 798 P.2d 294 (1990). The evidence must be viewed in the light most favorable to the party requesting the instruction. State v. Fernandez-Medina, *293 141 Wash.2d 448, 455-56, 6 P.3d 1150 (2000). The decision not to give an instruction is reviewed for an abuse of discretion. State v. Picard, 90 Wash.App. 890, 902, 954 P.2d 336 (1998).
¶ 18 The State charged Buzzell with one count of rape in the second degree, and the jury was instructed on the elements of the offense. Buzzell does not challenge the sufficiency of those instructions.
¶ 19 RCW 9A.44.050 states:
(1) A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person:
(a) By forcible compulsion;
(b) When the victim is incapable of consent by reason of being physically helpless or mentally incapacitated;
(c) When the victim is a person with a developmental disability and the perpetrator is a person who is not married to the victim and who:
(i) Has supervisory authority over the victim; or
(ii) Was providing transportation, within the course of his or her employment, to the victim at the time of the offense;
(d) When the perpetrator is a health care provider, the victim is a client or patient, and the sexual intercourse occurs during a treatment session, consultation, interview, or examination. It is an affirmative defense that the defendant must prove by a preponderance of the evidence that the client or patient consented to the sexual intercourse with the knowledge that the sexual intercourse was not for the purpose of treatment;
(e) When the victim is a resident of a facility for persons with a mental disorder or chemical dependency and the perpetrator is a person who is not married to the victim and has supervisory authority over the victim; or
(f) When the victim is a frail elder or vulnerable adult and the perpetrator is a person who is not married to the victim and who:
(i) Has a significant relationship with the victim; or
(ii) Was providing transportation, within the course of his or her employment, to the victim at the time of the offense.
(2) Rape in the second degree is a class A felony.
¶ 20 In contrast, RCW 9A.44.060, rape in the third degree requires:
(1) A person is guilty of rape in the third degree when, under circumstances not constituting rape in the first or second degrees, such person engages in sexual intercourse with another person, not married to the perpetrator:
(a) Where the victim did not consent as defined in RCW 9A.44.010(7), to sexual intercourse with the perpetrator and such lack of consent was clearly expressed by the victim's words or conduct, or
(b) Where there is threat of substantial unlawful harm to property rights of the victim.
(2) Rape in the third degree is a class C felony.
¶ 21 The State concedes that rape in the third degree is a lesser degree offense to rape in the second degree.[3] But, the State argues that Buzzell was not entitled to an instruction on the lesser offense because the present facts are indistinguishable from State v. Charles, where the appellate court determined that a victim's testimony that she was physically overpowered negates any inference that sexual intercourse was non consensual but still unforced. State v. Charles, 126 Wash.2d 353, 355, 894 P.2d 558 (1995). In Charles, the Washington Supreme Court rejected a defendant's argument that he was entitled to a jury instruction on the lesser degree offense of rape in the third degree when the victim testified that she had been *294 pushed to the ground and where the defendant argued that the sex was consensual. Id. Likewise, Morrison testified that she was physically restrained while telling Buzzell "no." Buzzell testified that Morrison consented to the sexual contact. There was no testimony that Buzzell continued to engage in sexual contact after Morrison had her alleged petite mal seizure. According to the testimony, the sexual contact was either through forcible compulsion or it was consensual. We hold that the trial court properly refused to give the rape in the third degree instruction.
¶ 22 Buzzell contends that rape in the third degree is a lesser included offense to the crime of indecent liberties. Buzzell fails to establish that he meets the first prong of the Workman test. It was possible for Buzzell to commit only the greater offense without committing the proposed lesser offense of rape in the third degree. Third degree rape requires both that the victim not be married to the perpetrator and that the victim clearly express a lack of consent by words or conduct. RCW 9A.44.060. Because indecent liberties can be committed without committing third degree rape, the latter cannot be a lesser included offense under the legal prong of the Workman test. See State v. Markle, 118 Wash.2d 424, 433-437, 823 P.2d 1101 (1992). Additionally, Buzzell fails to meet the factual test. Like Charles, the evidence supported that Buzzell either used forcible compulsion or that Morrison consented to the sexual contact. None of the facts support an instruction on rape in the third degree.
¶ 23 We hold that the trial court did not err in refusing to give the defendant's proposed instruction on rape in the third degree.

III. Statement of Additional Grounds
¶ 24 In his statement of additional grounds, Buzzell asserts several factual allegations to challenge his conviction. Specifically, he argues that Morrison mixed alcohol with her Dilatin, that Morrison had previously been raped, that Morrison's testimony was not truthful, and that Officer Rainey filed a false police report. Despite these factual assertions by Buzzell, he does not challenge the sufficiency of the evidence on which the jury found he was guilty of one count of indecent liberties. The first three additional grounds asserted by Buzzell are factual questions. Factual and credibility determinations are decided by the trier of fact, not reviewable on appeal. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990). In his fourth claimed error, Buzzell argues his constitutional rights were infringed and he was denied a fair trial because Officer Rainey filed a false police report. There is nothing in the record to support this assertion.
¶ 25 We hold that none of the claims in the statement of additional grounds merit reversal.
¶ 26 AFFIRMED.
WE CONCUR: DWYER and ELLINGTON, JJ.
NOTES
[1] Ms. Morrison suffers grand mal and petit mal seizures due to a brain injury sustained years earlier.
[2] Based on State v. Ritola, a Division III case, the State argues that consent is not the conceptual opposite of forcible compulsion. 63 Wash.App. 252, 817 P.2d 1390 (1991). In Ritola, a juvenile resident of Toutle River Boys Ranch was charged with one count of indecent liberties for suddenly grabbing the breast of his female counselor and stating "[n]ice tits." Id. at 253, 817 P.2d 1390. The court reversed his conviction because there was no evidence of forcible compulsion. The court stated that, "[i]n the absence of forcible compulsion, however, sexual contact with a non-impaired adult is not a sexual offense within RCW 9A.44, even though it occurs without that adult's consent." Id. at 256, 817 P.2d 1390. But, Ritola predates the legislature's amendment to the statutory definition of consent, which includes "sexual contact." RCW 9A.44.010(7).
[3] In State v. Ieremia this court found that third degree rape is not a lesser included offense to second degree rape, because a not every element of third degree rape is an element of second degree rape. 78 Wash.App. 746, 751, 899 P.2d 16 (1995) (third degree rape requires the victim not be married to the perpetrator and that the victim clearly express a lack of consent with words or conduct, but second degree rape does not require these elements).