# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

HAROLD H. WRIGHT, JR., and SYDNI
WRIGHT, husband and wife,

                      Appellants,

        v.

PIERCE COUNTY, a municipal
corporation; GERALD and JANE DOE
HORNE, in his capacity as Pierce
County Prosecutor as well as his
marital community; MARK LINDQUIST
in his capacity as Pierce County
Prosecutor as well as his marital
community and JANE DOE LINDQUIST;
PAUL and JANE DOE PASTOR, in his
capacity as Pierce County Sheriff as
well as his marital community; MARY
and JOHN DOE ROBNETT and the
marital community comprised thereof;
LORI KOOIMAN in her capacity as
Pierce County Deputy Prosecutor, an
individual; MARY ROBNETT and
JOHN DOE ROBNETT in her capacity
as Pierce County Prosecutor and JOHN
DOE ROBNETT and the marital
community comprised thereof; MARK
and JANE DOE PARFITT in his capacity
as Pierce County Deputy Sheriff as
well as his marital community; JAMES
and JANE DOE HARAI in his capacity
as Pierce County Deputy Sheriff as well
as his marital community; KEN and
JANE DOE BOARD, in his capacity as
Pierce County Deputy Sheriff as well as
his marital community,

                      Respondents.

No. 71869-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 31, 2015

BECKER, J. — Appellant Harold Wright attempts to hold Pierce County liable for mishandling the investigation and prosecution of a rape he was alleged to have committed. We affirm the order dismissing Wright's claims on summary judgment.

The long history of this litigation began in January 2004 with the report of a rape. In 2007, the State, through the Pierce County Prosecutor, charged Harold Wright and another defendant with second degree rape. Both men were convicted of third degree rape. Their convictions were reversed in September 2009 because the jury was improperly allowed to consider third degree rape—unforced, nonconsensual rape—as a lesser offense of second degree rape. The victim's testimony "supports only second degree rape and the defendant's evidence supports only that no rape occurred." State v. Wright, 152 Wn. App. 64, 73-74, 214 P.3d 968 (2009), review denied, 168 Wn.2d 1017 (2010).

The State renewed the charge of second degree rape in May 2010.

On February 9, 2011, Wright and his wife initiated this litigation, asserting claims under 42 U.S.C. § 1983 and state law. Named as defendants were Pierce County and a number of county officials: the county prosecutor, several deputy prosecutors, the sheriff, and two deputy sheriffs. The defendants immediately removed the case to federal court.

In January 2013, the State moved to dismiss the criminal prosecution of Wright, citing problems with the evidence. The trial court granted the motion.

2

In August 2013, the federal district court granted summary judgment on Wright's federal causes of action and remanded the case for further proceedings in state court. Wright did not appeal that ruling.

In December 2013, the defendants moved for summary judgment on the state law claims in superior court. These claims included negligent training, negligent retention, outrage, malicious prosecution and abuse of process, defamation, and a loss of consortium claim by Wright's wife. The trial court granted the motion for summary judgment in April 2014. Wright appeals.

We review orders granting summary judgment de novo. We take all factual inferences in favor of Wright as he is the nonmoving party. Musso-Escude v. Edwards, 101 Wn. App. 560, 563, 4 P.3d 151 (2000).

Recounted in the light most favorable to Wright, the basic facts are that he was accused of raping a woman at a party where everyone was drinking. The complaining witness said someone pulled her into a bedroom where it was dark. She testified that it felt like two men removed her clothing and participated in the rape, but she could not see who they were and she could not identify their voices. She thought Wright might have been one of them because she felt a leather jacket when she was pulled into the room and Wright was the only man wearing a leather jacket. Wright was further implicated when a forensic examination indicated that his saliva was on the victim's chest. Wright testified that he did not have sexual contact with the victim. The other defendant testified that his intercourse with the victim was consensual. Wright, 152 Wn. App. at 68-69.

One of the central disputes in the present litigation is whether the prosecutors constructively destroyed evidence of an exculpatory statement the victim allegedly made to deputy prosecutor Sunni Ko. Ko interviewed the victim in April 2004 and wrote down some statements the victim made during the interview. Wright was not given copies of Ko's notes. During preparation for the second trial, Jared Ausserer, another deputy prosecutor, emailed Wright's criminal defense attorney, Barbara Corey, summarizing the statements the victim made to Ko. Ausserer's email refers to a "work product packet" that deputy prosecutor Lori Kooiman found in an archived box.

Wright submitted Corey's declaration in response to the motion for summary judgment. Corey declared that contrary to what Ausserer said in his written email to her, Ausserer told her verbally that he actually found the victim's statements to Ko in Kooiman's garage. Wright claims that an issue of material fact arises from Corey's further declaration that Ausserer told her—contrary to the summary of the victim's statements presented in Ausserer's email—that the victim admitted to Ko that Wright was not in the room at the time of the rape. Corey declares that she "was astonished" and told Ausserer that the State should have turned this exculpatory evidence over to the defense years ago. Corey declares that "Ausserer agreed."

Another focal point of this litigation is the 911 call that reported the rape the morning after the party. The actual recording of the call was not preserved. Wright alleges that the recording was intentionally destroyed, making some of the County defendants liable for malicious prosecution. The County contends it was

4

recorded over in the normal course of business. In any event, although the recording itself was not preserved, a computer aided dispatch (CAD) report contained a summary of the call. The CAD report was not disclosed to the defense until December 2012, a month before the prosecution was dismissed. The report states the caller's daughter and friend said that they were both raped by Wright. This was inconsistent with the testimony of the State's witnesses that only one woman was raped. The State's motion to dismiss describes the report as "recently discovered" and mentions it as one of the evidentiary problems that weakened the prosecution. Wright contends the failure to preserve the original recording of the 911 call is evidence of the prosecutors' willful disregard of their obligation to disclose exculpatory evidence.

The trial court's written ruling on summary judgment states a number of alternative legal bases for the order of dismissal: Wright's claims lack a factual basis, are barred by collateral estoppel, are untimely under the statute of limitations, are subject to the complete defense of probable cause, and cannot overcome immunity. We find no error in the trial court's ruling. We will focus primarily on immunity.

Immunity decisions regarding the liability of a state prosecutor depend on the nature of the function performed, not the identity of who performed it. Kalina v. Fletcher, 522 U.S. 118, 127, 130-31, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997).

A prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after convictions is an exercise of the prosecutorial function for which a prosecutor enjoys absolute immunity from a suit for

5

damages. Broam v. Bogan, 320 F.3d 1023, 1030 (9th Cir. 2003); Ybarra v. Reno Thunderbird Mobile Home Vill., 723 F.2d 675, 679-80 (9th Cir. 1984). Absolute immunity bars Wright's claims based on failure by the prosecutors to preserve the 911 recording summarized in the CAD report.

Absolute immunity does not apply to a prosecutor's deliberate destruction of evidence. Yarris v. County of Delaware, 465 F.3d 129, 136-38 (3d. Cir. 2006). Based on Corey's declaration, Wright argues that Kooiman "constructively destroyed" the victim's statements to Ko by hiding Ko's notes in her garage and that the record supports an inference that Kooiman's conduct was deliberate.

Wright cites no case holding that withholding evidence for a prolonged period of time is the same as destroying it. Rather, prosecutors are entitled to immunity even when they withhold evidence after trial while a conviction is on appeal. Yarris, 465 F.3d at 137. Immunity thus bars Wright from suing Kooiman for her alleged concealment of the victim's statements to Ko.

Wright asks us to assume the truth of Corey's declaration that Ausserer told her that the victim told Ko that Wright was not in the room when the alleged rape occurred. Assuming the victim's statements to Ko cleared Wright of the rape allegation, Wright contends Kooiman maliciously initiated the first prosecution without probable cause to believe Wright committed rape. This conduct, according to Wright, constitutes malicious prosecution and the tort of outrage.

In June 2007, a few months after Kooiman initiated the first prosecution, Kooiman presented a 16-page document to the trial court for an in camera

6

review. The trial court determined that the document was nondiscoverable attorney work product. Kooiman's declaration states that the statements the victim made to Ko were contained in that document. Wright has not rebutted that declaration, so the County has established that the trial court's ruling classified Ko's interview notes as work product. That ruling insulates the County from the claim of malicious prosecution or any other claim based on the obligation of prosecutors to turn over exculpatory information to the defense, regardless of whether or not Corey accurately related her communications with Ausserer and whether or not Corey's declaration relies on inadmissible hearsay.

Wright also argues that Kooiman, by swearing to the truth of the facts contained in the statement of probable cause, relinquished absolute immunity from suit on these causes of action. A prosecutor is not immune from litigation relating to a probable cause certification in which she served the function of a witness by personally swearing to the truth of the evidence presented. This is because testifying about facts is the function of the witness, not a lawyer. Kalina, 522 U.S. at 130-31. This case is not like Kalina. In the charging document in the first prosecution, Kooiman certified that she had become familiar with an investigation of Wright regarding a rape, and she described aspects of the sheriff's investigatory efforts. Contrary to Wright's allegation, she did not swear to the truth of the forensic evidence that Wright's saliva was found on the victim's chest. She served a prosecutorial function for which she is immune. Moreover,

although the accuracy of the forensic evidence was thrown into doubt as the second trial approached, the judge at the first trial found it sufficient to defeat a motion for a directed verdict.

Because the prosecutors are immune, Wright's supervisory claims against Pierce County were also properly dismissed. Creelman v. Svenning, 67 Wn.2d 882, 885, 410 P.2d 606 (1966).

Wright also contends that in May 2010, when the State renewed the charges after the first conviction was reversed, Kooiman stepped out of her prosecutorial function by making a defamatory public statement about him. Speaking to a Tacoma newspaper regarding Wright and the other criminal defendant, Kooiman said the decision was made to retry them because "'We think they are guilty of the crime.'"

A prosecutor's statements to the media are not entitled to absolute immunity. Buckley v. Fitzsimmons, 509 U.S. 259, 277, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993). Nevertheless, Kooiman's statement was not actionable as defamation because it was not provably false. See Schmalenberg v. Tacoma News, Inc., 87 Wn. App. 579, 590-91, 943 P.2d 350 (1997), review denied, 134 Wn.2d 1013 (1998).

Kooiman's statement to the press that Wright was guilty summarized the official position of the prosecutor's office at that particular time. It explained why the reversal of the first conviction was not going to result in the charges being dropped. In that context, Kooiman's statement was an opinion or idea, not a statement of some fact that she either knew or should have known was

untrue. As an opinion, it was supported by the corroborating forensic evidence that the trial judge found was sufficient to let the question of Wright's guilt go to the jury. Also, as a public official making a statement about a matter within her official duties, Kooiman had at least a qualified privilege. Gold Seal Chinchillas, Inc. v. State, 69 Wn.2d 828, 832-34, 420 P.2d 698 (1966); Wood v. Battle Ground Sch. Dist., 107 Wn. App. 550, 569, 27 P.3d 1208 (2001). The record is insufficient to prove she abused the privilege. We conclude Kooiman's statement to the press is not actionable as defamation.

Wright alleged claims of malicious prosecution against the sheriff and his deputies for improperly conducting coached group interviews with the witnesses and presenting the prosecution with information they knew to be false.

A prosecutor's independent decision to file an information may break the chain of causation between the unconstitutional actions of other officials and the harm suffered as a result of those actions. See Beck v. City of Upland, 527 F.3d 853, 862 (2008). Here, the circumstances suggest the deputies may not have used the most reliable interview techniques, but that does not mean they compromised the prosecutor's independent judgment by supplying information they knew to be false. The trial court correctly concluded that Wright lacked proof of the element of proximate cause with respect to the claims against the deputies. The chain of causation was broken by the prosecutor's decision to charge.

Affirmed.

WE CONCUR:

Becker, J.

Jay, J.